Steve W. Berman (*pro hac vice* pending)
Ari Y. Brown (*pro hac vice* pending)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
*steve@hbsslaw.com*
*ari@hbsslaw.com*
          -and-
Jeff D. Friedman (173886)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
*jefff@hbsslaw.com*

*Counsel for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA and ROMUALDO RONQUILLO wife and husband; ADRIANA and MARK SCOTTI, wife and husband; MONTY EARL on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> LUMBER LIQUIDATORS, INC., a Delaware corporation, <br><br> Defendant. | No. <br><br><br> CLASS ACTION COMPLAINT |

CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Page(s)**

I.     INTRODUCTION ............................................................................................1

II.    JURISDICTION ..............................................................................................5

III.   PARTIES .........................................................................................................5

IV.   FACTUAL ALLEGATIONS ..........................................................................5

       A.     Lumber Liquidators Represents that its Laminate Wood Flooring
             Products Meet California's Strict Emissions Standards for Products
             it Sells in Every State ...........................................................................5

       B.     California's Formaldehyde Standards ...................................................6

       A.     Lumber Liquidators' Composite Laminate Flooring Products ...................................7

       B.     Lumber Liquidators Misrepresents that its Composite Laminate
             Flooring Products Meet California Emissions Standards............................9

V.     FACTS RELATING TO NAMED PLAINTIFFS ..........................................14

       A.     Maria and Romualdo Ronquillo ........................................................14

       B.     Mark and Adriana Scotti ....................................................................16

       C.     Monty Earl..........................................................................................18

VI.   CLASS ACTION ALLEGATIONS ..............................................................20

VII.  CAUSES OF ACTION...................................................................................23

       COUNT I:  FRAUDULENT CONCEALMENT ................................................23

       COUNT II:  VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT,
       15 U.S.C. §§ 2301, *ET SEQ* ...........................................................................24

       COUNT III:  VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS
       CODE § 17200, *ET SEQ.,*  UNLAWFUL, UNFAIR, OR FRAUDULENT
       BUSINESS  ACTS AND PRACTICES..............................................................25

       COUNT IV:  VIOLATION OF CALIFORNIA BUSINESS AND
       PROFESSIONS CODE § 17500, *ET SEQ.* ....................................................28

       COUNT V:  VIOLATION OF CALIFORNIA CONSUMER LEGAL
       REMEDIES ACT,  CAL. CIV. CODE § 1750 *ET SEQ.* ................................29

       COUNT VI:  VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT ...........30

       COUNT VII:  VIOLATION OF THE COLORADO CONSUMER
       PROTECTION ACT ..........................................................................................32

CLASS ACTION COMPLAINT      - i -

1

COUNT VIII:  BREACH OF EXPRESS WARRANTY .......................................................34

2

COUNT IX:  BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY ............34

3

COUNT X:  DECLARATORY RELIEF ..............................................................................35

4

VIII.    PRAYER FOR RELIEF .........................................................................................36

5

IX.    DEMAND FOR JURY TRIAL ..................................................................................37

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

1.      Defendant Lumber Liquidators, Inc. has been selling composite laminate flooring products that emit formaldehyde at levels known to pose serious health risks.  The formaldehyde emissions from certain Lumber Liquidators products far exceed the maximums allowed by the California Air Resources Board ("CARB").  For nearly two years, and possibly longer, Lumber Liquidators has known that flooring products it has manufactured in China to its specifications and which it intends for use in people's homes emit unsafe levels of formaldehyde.  Nonetheless, Lumber Liquidators has continued to specifically and falsely label these products as being compliant with all CARB formaldehyde standards and to falsely state on its website and elsewhere that its products "meet the highest quality and environmental standards."  As a result, consumers have been buying flooring products from Defendant that are unsafe and should not be distributed or sold – and certainly not sold with the representation that the products meet the strict formaldehyde standards Lumber Liquidators claims they meet.

2.      Laminate wood flooring is generally composed of a base layer of pressed composite wood (particle board or medium-density fiberboard), which is a mixture of sawdust or wood particles bonded together with glue or resin.  The base layer is covered with a veneer or other material such as a photographic image of wood, affixed as a decorative surface.

3.      Formaldehyde is a common ingredient in the glue used in the composite laminate flooring base layer.  If used in low levels, the formaldehyde will quickly dissipate during installation.  However, if used in higher levels, the formaldehyde is released as a gas that emanates from the flooring over time.  Long-term exposure to formaldehyde is linked to increased risk of cancer of the nose and sinuses, nasopharyngeal and oropharyngeal cancer, lung cancer, and leukemia.  Formaldehyde also causes burning eyes, nose and throat irritation, coughing, headaches, dizziness, joint pain, and nausea.  It

CLASS ACTION COMPLAINT                - 1 -

has also been linked to the exacerbation of asthma in formaldehyde-sensitive individuals and poses a particularly acute risk to children.

4.      In 2007, CARB adopted regulations designed to reduce public exposure to formaldehyde.  The regulations established two phases of emissions standards that composite laminate flooring products must meet:  an intial Phase 1, and later a more stringent Phase 2.  These regulations require that any composite wood contained in flooring products be certified as having been manufactured using compliant wood products throughout their production.

5.      Lumber Liquidators supervises and controls the manufacturing of composite laminate flooring products in several mills in China.  Lumber Liquidators also packages, distributes, markets, and/or sells composite laminate flooring products that have been manufactured in China to consumers in California and throughout the country.

6.      From October 2013 through November 2014, three accredited laboratories tested the formaldehyde emissions of laminate wood flooring from several nationwide retail outlets, including Home Depot, Lowe's, and Lumber Liquidators.  Of the dozens of products tested, by far the highest formaldehyde levels were found in the composite laminate flooring sold by Lumber Liquidators that was produced in China.  The levels of formaldehyde gas emitted by these Chinese-made Lumber Liquidators products were several times the maximum CARB limits and exceeded the standards promulgated in the Toxic Substances Control Act, 15 U.S.C. § 2601 *et seq*. (title VI – formaldehyde Standards of Composite Wood Products).  Similar products manufactured in North America generally had much lower formaldehyde levels that complied with the formaldehyde emission standards promulgated by CARB.  Similar products tested from Lumber Liquidators' competitors also showed significantly lower formaldehyde levels that generally complied with the CARB formaldehyde emission standards.  The list of products that have been tested and found to exceed the CARB limit for formaldehyde emissions is set forth in paragraph 29 below.

CLASS ACTION COMPLAINT                    - 2 -

7.      Despite this discrepancy, Lumber Liquidators did not differentiate between its domestically manufactured floor laminates and those made in China.  Defendant's labels on its Chinese composite laminate flooring products state that the products comply with strict formaldehyde emission standards promulgated by CARB by stating "California 93120 Phase 2 Compliant Formaldehyde."

8.      In 2014 and early 2015, television news program, "60 Minutes," conducted an independent investigation into Lumber Liquidators' Chinese-made flooring products.  Investigators purchased 31 boxes of various Chinese-made flooring products from various Lumber Liquidators stores around the country and sent the sample for testing at two certified labs.  Of the 31 samples, only one was compliant with CARB formaldehyde emissions standards.  "Some were more than 13 times over the California limit."[1]

9.      60 Minutes also sent undercover investigators to three different mills in China that manufacture laminates and composite flooring on behalf of Lumber Liquidators.  60 Minutes reported that:

> Employees at the mills openly admitted that they use core boards with higher levels of formaldehyde to make Lumber Liquidators laminates, saving the company 10-15 percent on the price.  At all three mills they also admitted [to] falsely labeling the company's laminate flooring as CARB [compliant].[2]

10.     Lumber Liquidators does not give consumers any warnings about unlawful formaldehyde levels in its composite laminate flooring products.  Instead, along with its product labels, it represents on its website and warranties that its flooring products comply with strict formaldehyde standards.  Lumber Liquidators has made false and misleading statements that its flooring products comply with CARB formaldehyde standards, and the even more stringent European formaldehyde

---

[1] *Lumber Liquidators Linked to Health and Safety Violations*, 60 Minutes (Mar. 1, 2015), available at http://www.cbsnews.com/news/lumber-liquidators-linked-to -health-and-safety-violations/ (last visited March 4, 2015).

[2] *Id*.

CLASS ACTION COMPLAINT                   - 3 -

010503-11 765958 V1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

standards. Lumber Liquidators' website falsely states, "we not only comply with laws-we exceed them." "Highest Quality Flooring. GUARANTEED."[3]

11.     Lumber Liquidators has continually sold these products to California, New Jersey, and Colorado customers at its retail stores throughout those states, through its retail website, www.lumberliquidators.com, and using its toll-free customer service telephone line.

12.     Plaintiffs purchased and installed a Lumber Liquidators product that was manufactured in China, labeled as being CARB compliant, and that was of a type found to have formaldehyde levels that exceed CARB limits. Plaintiffs seek to represent themselves and similarly situated persons in California, New Jersey, and Colorado who have purchased Defendant's composite laminate flooring products that were manufactured in China, labeled as CARB compliant, and sold to consumers in the respective states in which they reside ("the putative Classes"). Plaintiffs seek restitution of monies they and the putative Classes spent on Defendant's flooring products, the cost of replacing the products, injunctive relief enjoining Defendant's ongoing unlawful, unfair, and fraudulent business practices, and other damages on behalf of themselves and the putative Classes.

13.     Plaintiffs' counsel provided Defendant with a Notice of Violations of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* by certified mail on March 5, 2015 on behalf of a proposed class of California consumers. On March 13, 2015, Counsel sent a second letter on behalf of Plaintiffs Maria and Romualdo Ronquillo and the proposed California Class described below. In the event Defendant does not take the appropriate actions itemized in the notice within 30 days, Plaintiffs intend to amend their complaint to add a claim under the Act.

---

[3] http://www.lumberliquidators.com/11/flooring/quality?WT.ad-GLOBAL FOOTER Quality (last visited on March 2, 2015, Page unavailable as of March 4, 2015).

CLASS ACTION COMPLAINT                    - 4 -

## II.       JURISDICTION

14.       This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2) in that the matter is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and members of the Class are citizens of a State different from the Defendant.

15.       This Court has personal jurisdiction over the parties in this action by the fact that Defendant is a corporation that is licensed to do business in the state of California or otherwise conduct business in the state of California.

16.       Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) inasmuch as the unlawful practices are alleged to have been committed in this District, Defendant regularly conducts business in this District, and some of the the named Plaintiffs reside in this District.

## III.       PARTIES

17.       Plaintiffs Maria and Romualdo Ronquillo are residents of Fremont, California.

18.       Plaintiffs Mark and Adriana Scotti are residents of Howell, New Jersey.

19.       Plaintiff Monty Earl is a resident of Aspen, Colorado.

20.       Defendant Lumber Liquidators Inc. is a Delaware corporation with its headquarters and principal place of business at 3000 John Deere Rd., Toano, VA 23168.  Lumber Liquidators, Inc. distributes, markets, and/or sells composite laminate flooring products and actively conducts business throughout the states of California, New Jersey, and Colorado.

## IV.       FACTUAL ALLEGATIONS

**A.       Lumber Liquidators Represents that its Laminate Wood Flooring Products Meet California's Strict Emissions Standards for Products it Sells in Every State**

21.       The emissions limits set by the California Air Resources Board ("CARB") are among the most comprehensive and exacting in the country.  These standards have served as a model for national standards being considered by the Environmental Protection Agency.

CLASS ACTION COMPLAINT                                      - 5 -

010503-11 765958 V1

22.     Defendant invokes these CARB standards and represents to consumers on its website, on its product packaging, and in various other materials that its composite laminate flooring products meet the CARB standards for formaldehyde emissions and are therefore safe.  Defendant unequivocally states that though CARB only legally governs products sold in the state of California, Lumber Liquidators ensures that its composite laminate flooring products meet the CARB standard no matter where they are sold.

23.     Lumber Liquidators' website states as follows:

<u>Is Lumber Liquidators Compliant with the California law?</u>

**Laminate and engineered flooring products sold by Lumber Liquidators are purchased from mills whose production method has been certified by a Third Party Certifier approved by the State of California to meet the CARB standards.** The scope of the certification by the Third Party Certifier includes the confirmation that the manufacturer has implemented the quality systems, process controls, and testing procedures outlined by CARB and that their products conform to the specified regulation limits. The Third Party Certifier also provides ongoing oversight to validate the manufacturers' compliance and manufacturers must be periodically re-certified.

<u>Does CARB only apply to California?</u>

Though it currently applies only to products sold in California, **Lumber Liquidators made a decision to require all of our vendors to comply with the California Air Resources Board regulations regardless of whether we intended** to sell the products in California or any other state/country.

<u>What extra steps does Lumber Liquidators take to ensure compliance?</u>

In addition to the California Air Resources Board requirements, **Lumber Liquidators regularly selects one or more finished products from each of its suppliers and submits them for independent third-party lab testing.** This is done as a monitoring activity to validate ongoing quality control.[4]

**B.     California's Formaldehyde Standards**

24.     In 1988, the State of California officially listed Formaldehyde (gas) as a chemical known to cause cancer.

---

[4] http://www.lumberliquidators com/11/flooring/ca-air-resources-board-regulations?Wt.ad—GLOBAL_FOOTER_CaliRegCARB (last visited on March 4, 2015) (emphasis in original).

25.     In 1992, the CARB formally listed formaldehyde as a Toxic Air Contaminant in California with no safe level of exposure.

26.     The CARB approved the Airborne Toxic Control Measure to Reduce Formaldehyde Emissions from Composite Wood Products in April 2007.  The formaldehyde emission standards became effective January 2009 and set decreasing limits in two Phases.  Cal. Code Regs., tit. 17, § 93120.2(a).

27.     The CARB Regulations apply to composite wood ("laminate") products including flooring.  Cal Code Regs., tit. 17, § 93120.2(a).

28.     The CARB Phase 1 Emission Standard for MDF in effect from January 1, 2009 to December 31, 2010, limited formaldehyde emissions to 0.21 parts per million ("ppm").  The Phase 2 Emission Standard for MDF dictates that, as of January 1, 2011, MDF flooring products such as those involved in this action must emit no more than 0.11 parts per million ("ppm") of formaldehyde.  The CARB Phase 1 Emission Standard for Thin MDF, which was in effect from January 1, 2009 to December 31, 2011, limited formaldehyde emissions to 0.21 ppm.  The CARB Phase 2 Emission Standard for Thin MDF dictates that, as of January 1, 2012, thin MDF flooring products such as those involved in this action must emit no more than 0.13 ppm of formaldehyde.  Cal. Code Regs., fit. 17, § 93120.2(a).  (Hereinafter, the formaldehyde emission standards for both MDF and Thin MDF will be referred to as the "CARB limit.")

A.     **Lumber Liquidators' Composite Laminate Flooring Products**

29.     Defendant supervises and/or controls the manufacturing and packaging of composite laminate flooring products in China that Defendant then distributes, markets, and/or sells in California and throughout the country.  Those composite laminate flooring products contain formaldehyde and emit formaldehyde gas at levels that exceed, and sometimes grossly exceed, the CARB limit.  Those composite laminate flooring products include the following:

CLASS ACTION COMPLAINT          - 7 -

a.   8 mm Bristol County Cherry Laminate Flooring

b.   8 mm Dream Home Nirvana French Oak Laminate Flooring

c.   8 mm Dream Home Nirvana Royal Mahogany Laminate Flooring

d.   12 mm Dream Home Ispiri Americas Mission Olive Laminate Flooring

e.   12 mm Dream Home Ispiri Chimney Tops Smoked Oak Laminate Flooring

f.   12 mm Dream Home Ispiri Poplar Forest Oak Laminate Flooring

g.   12 mm Dream Home Kensington Manor Antique Bamboo Laminate Flooring

h.   12 mm Dream Home Kensington Manor Cape Doctor Laminate Flooring

i.   12 mm Dream Home Kensington Manor Fumed African Ironwood Laminate Flooring

j.   12 mm Dream Home Kensington Manor Glacier Peak Poplar Laminate Flooring

k.   12 mm Dream Home Kensington Manor Golden Teak Laminate Flooring

l.   12 mm Dream Home Kensington Manor Handscraped Imperial Teak Laminate Flooring (SKU 10029601)

m.   12 mm Dream Home Kensington Manor Handscraped Imperial Teak Laminate Flooring (SKU 10023958)

n.   12 mm Dream Home Kensington Manor Handscraped Summer Retreat Teak Laminate Flooring

o.   12 mm Dream Home Kensington Manor Sandy Hills Hickory Laminate Flooring

p.   12 mm Dream Home Kensington Manor Tanzanian Wenge Laminate Flooring

q.   12 mm Dream Home Kensington Manor Warm Springs Chestnut Laminate Flooring

CLASS ACTION COMPLAINT                    - 8 -

010503-11  765958 V1

r.      12 mm Dream Home St. James African Mahogany Laminate Flooring

s.      12 mm Dream Home St. James Blacksburg Barn Board Laminate Flooring

t.      12 mm Dream Home St. James Brazilian Koa Laminate Flooring

u.      12 mm Dream Home St. James Chimney Rock Charcoal Laminate Flooring

v.      12 mm Dream Home St. James Cumberland Mountain Oak Laminate Flooring

w.      12 mm Dream Home St. James Golden Acacia Laminate Flooring

x.      12 mm Dream Home St. James Nantucket Beech Laminate Flooring

y.      12 mm Dream Home St. James Oceanside Plank Bamboo Laminate Flooring

z.      12 mm Dream Home St. James Vintner's Reserve Laminate Flooring

aa.     15 mm Dream Home St. James Sky Lakes Pine Laminate Flooring

30.     CARB regulations apply to all of the above-listed flooring products.

31.     On information and belief, each of the Lumber Liquidators' composite laminate flooring products listed in paragraph 29 above are manufactured in China using a common formula, design, or process.

32.     On information and belief, each of the Lumber Liquidators' composite laminate flooring products listed in paragraph 29 above emit formaldehyde gas at levels that exceed the CARB limits.

**B.      Lumber Liquidators Misrepresents that its Composite Laminate Flooring Products Meet California Emissions Standards**

33.     Despite unlawful levels of formaldehyde emissions from its composite laminate flooring products, Defendant misrepresents to consumers on its website, product packaging, and warranties that its composite laminate flooring products meet the CARB standards for formaldehyde emissions.

34.     After the dangerous formaldehyde levels in Lumber Liquidators' products was featured on the news program "60 Minutes," Lumber Liquidator responded by posting a letter from its Chairman on its website stating:

CLASS ACTION COMPLAINT                    - 9 -

> Let me make one thing very clear – our laminate products, all of our products, are 100% safe.
>
> …
>
> We comply with applicable regulations regarding our products, including California standards for formaldehyde emissions for composite wood products – the most stringent rules in the country. We take our commitment to safety even further by employing compliance personnel around the world and utilizing the latest in cutting-edge technology to provide our customers with top quality and high value flooring.[5]

35.     In addition, the product packaging for Lumber Liquidators' composite laminate flooring states:  "CARB . . . CALIFORNIA 93120 Phase 2 Compliant Formaldehyde."  On information and belief, this statement is presented on all Lumber Liquidators' composite laminate flooring product packaging regardless of whether the flooring inside the packaging complies with the CARB standards.

36.     Lumber Liquidators' purchase orders come with a warranty stating that the customer's purchased flooring products comply "with all applicable laws, codes and regulations," and "bear all warnings, labels, and markings required by applicable laws and regulations."

37.     Instead of warning consumers about formaldehyde emissions from its composite laminate flooring products, Lumber Liquidators' website states that it has Third Party Certifiers approve its flooring products to meet CARB standards.

        Regulations and Lumber Liquidators' Compliance

> The California Air Reform Bill (CARB) requires that products containing Hardwood Plywood Veneer Core (HWP-VC), Hardwood Plywood Composite Core (HWP-CC), Particleboard and MDF be tested for emissions and products not meeting the strict standards for emissions may not be sold in California.
>
> The Environmental Protection Agency has drafted national standards for formaldehyde emissions in composite wood products that are similar to those of California. Those standards have not yet been enacted.

---

[5] http://www.lumberliquidators.com/sustainability/60-minutes-letter-from-tom/ (last visited March 4, 2015).

All laminates and engineered flooring products sold by Lumber Liquidators are purchased from mills whose production method has been certified by a Third Party Certifier approved by the State of California to meet the CARB standards. The scope of the certification by the Third Party Certifier includes the confirmation that the manufacturer has implemented the quality systems, process controls, and testing procedures outlined by CARB and that their products conform to the specified formaldehyde- emission limits. The Third Party- Certifier also provides ongoing oversight to validate the manufacturers' compliance and manufacturers must be periodically re-certified. Though it currently applies only to products sold in California, Lumber Liquidators made a decision to require all of our suppliers to comply with CARB regardless of whether we intended to-sell.-the products _in California or-any other state/country. In addition, our suppliers manufacture their products in accordance with the European standard which has stricter guidelines than the California. In -addition to the CARB requirements, Lumber Liquidators regularly selects one or more products from each of its suppliers and submits them for independent third-party lab testing. This is done as a monitoring activity to validate ongoing compliance.[6]

38.    Lumber Liquidators materially misrepresents the safety of its composite laminate flooring products by advertising and representing that its flooring products are compliant with the CARB limit when in fact they are not.

39.    Lumber Liquidators materially omits any disclosure to consumers that they are buying composite laminate flooring products with unlawfully high levels of formaldehyde.

40.    These composite laminate flooring products have been sold by Defendant for use in California and throughout the country for more than four years.

41.    Defendant continues to distribute and sell its composite laminate flooring products to customers in California and throughout the country with the representation that they are CARB compliant, even though they are not.

42.    On information and belief, at all times relevant to this action, Lumber Liquidators has knowingly misrepresented its composite laminate flooring products as CARB compliant and knowingly

---

[6] http://www.lumberliquidators.com/ll/flooring/Flooring101?Wt.ad=RIGHTNAV_Flooring101 (last visited March 4, 2015).

CLASS ACTION COMPLAINT                        - 11 -

1    failed to disclose to consumers the unlawful levels of formaldehyde emissions from its composite

2    laminate flooring products.

3         43.    At the same time that Defendant made public statements to consumers that the

4    composite laminate flooring products it sells are sourced from mills whose production methods are

5    CARB compliant, that the products conform to CARB's specified formaldehyde emission limits, and

6    the measures Lumber Liquidators takes to ensure full compliance by its suppliers – all to increase its

7    sales – Defendant acknowledged the opposite to the SEC, stating, "While our suppliers agree to operate

8    in compliance with applicable laws and regulations, including those relating to environmental and labor

9    practices, ***we do not control our suppliers***.  Accordingly, we cannot guarantee that they comply with

10   such laws and regulations or operate in a legal, ethical and responsible manner.  Violation of

11   environmental, labor or other laws by our suppliers or their failure to operate in a legal, ethical and

12   responsible manner, could … expose us to legal risks as a result of our purchase of product from non-

13   compliant suppliers."[7]

14

15        44.    Despite its stated concern that its suppliers might not comply with environmental

16   regulations, Defendant has failed to sufficiently exercise its quality control over those suppliers to

17   ensure that they comply with CARB standards, and Defendant continues to sell to California consumers,

18   and to consumers throughout the country, composite laminate flooring products that Defendant obtains

19   from those suppliers.

20        45.    On June 20, 2013, the news website *Seeking Alpha* published a lengthy article based on a

21   letter to the California Air Resources Board.  The letter and article documented high formaldehyde

22

23

24

25   _____

[7] Lumber Liquidators February 25, 2014 10-K at p. 14,
http://investors.lumberliquidators.com/index.php?o=25&s=127 (emphasis added).  In the same
filing, Lumber Liquidators acknowledges that it oversees quality control in its Chinese mills: "We
are able to set demanding specifications for product quality and our own quality control and
assurance teams are on-site at the mills, coordinating inspection and assurance procedures."  *Id.* at p.
5.

levels in Chinese-made composite laminate flooring sold by Lumber Liquidators, as shown by tests a certified laboratory conducted on three samples of Chinese-made composite laminate flooring sold by Lumber Liquidators.  Enclosed with the letter were the actual test results showing that the tested product, Mayflower 5/16" x 5" Bund Birch Engineered, emits three and one-half times the maximum formaldehyde emission level.  Nonetheless, the letter notes that Lumber Liquidators labeled the product as being CARB compliant.

46.     On information and belief, high formaldehyde content resins and glues are less expensive and dry more quickly than low formaldehyde glues and resins.  By using high formaldehyde content resins and glues rather than low formaldehyde content resins and glues, Lumber Liquidators' Chinese manufacturers are able to produce composite laminate flooring more quickly and at higher volumes thereby reducing costs and generating greater profits for Lumber Liquidators.

47.     On or about November 26, 2013, a putative federal securities class action lawsuit was filed against Lumber Liquidators in the United States District Court in the Eastern District of Virginia based on drops in the stock price following the *Seeking Alpha* article and its allegations concerning the formaldehyde emissions from Defendant's composite laminate flooring products.  *Kiken v. Lumber Liquidators Holdings, Inc., et al.*, No. 4:2013-cv-00157 (E.D. Va).  This case is currently pending. Lumber Liquidators was made aware during the pendency of this and other lawsuits of complaints and allegations that its composite laminate flooring products from China emit formaldehyde gas at levels that violate the CARB limit.

48.     Numerous Lumber Liquidators customers have posted internet complaints on Defendant's website concerning formaldehyde emissions, including Deborah of North Fork, California who posted on the Consumer Affairs website on September 11, 2014:

> We spent thousands of dollars and went with the LL recommended
> professional installer... the product we were sold was supposedly Made
> in the USA--nope, China. One of my children cannot walk barefoot on

the floor because he will blister from the formaldehyde content. We
saved for years for this floor, it will need to be replaced. Please RUN
to another dealer. This company does not care about the customer one
bit. This has been a devastating blow to our family.[8]

49.     Based on lawsuits, articles, and blog posts, and on its own first-hand knowledge,
Defendant knew or should have known that its composite laminate flooring products were not compliant
with CARB standards.  Despite this knowledge, Defendant failed to reformulate its flooring products so
that they are CARB compliant and failed to disclose to consumers that these products emit unlawful
levels of formaldehyde.  Instead, Defendant has sold and continues to sell composite laminate flooring
products in California and throughout the country that exceed the CARB limit while continually
representing to consumers that those products are CARB compliant.

50.     In light of the false representations Lumber Liquidators has made regarding
formaldehyde levels, and in light of the health risks posed by formaldehyde, Plaintiffs and members of
the Classes would reasonably fear for their safety by allowing the composite laminate flooring to remain
in their homes.  It would therefore be reasonable and prudent to incur the cost of removing and replacing
the laminate flooring rather than continue to incur the risks posed by the laminate flooring that may
contain high levels of formaldehyde.

## V.     FACTS RELATING TO NAMED PLAINTIFFS

### A.     Maria and Romualdo Ronquillo

51.     In August 2014, Plaintiffs Maria and Romualdo Ronquillo purchased approximately 500
square feet of 12 mm St. James Golden Acacia Laminate Flooring at a Lumber Liquidators store located
in San Leandro, California.  As stated on the packaging, the flooring was produced at the laminate mill
in China.

---

[8] http://www.Consumeraffairs.com/homeowners/lumber liquidators.html December 2, 2014.

CLASS ACTION COMPLAINT          - 14 -

010503-11  765958 V1

52.     The Ronquillos purchased the composite laminate flooring for the purpose of installing it in their home that they share with Ms. Ronquillo's 83-year-old mother.  Ms. Ronquillo is a nurse and formerly worked in the toxicology field.  She also suffers from asthma and from seasonal allergies. Both Mr. and Ms. Ronquillo were aware of risks inherent in formaldehyde and in the risk that formaldehyde has been used in certain building materials.  They are also aware that California has some of the most stringent regulations in the country.  When shopping for flooring products they therefore specifically sought to ensure that the flooring products they were considering complied with California regulations for all dangerous substances including formaldehyde.

53.     Prior to purchasing the composite laminate flooring from Lumber Liquidators, the Ronquillos viewed Lumber Liquidators' website and saw the representations Lumber Liquidators made regarding the safety and compliance of its products.

54.     At the time they purchased the composite laminate flooring from the Lumber Liquidators retail store, the Ronquillos noted the label stating that the product was "California … Phase 2 Compliant for Formaldehyde."

55.     The Ronquillos relied on the representations that the composite laminate flooring they were purchasing complied with California regulations regarding formaldehyde.  They would not have purchased the product absent this or an equivalent representation.

56.     At the time that Plaintiffs purchased their composite laminate flooring, Lumber Liquidators' representation that the product was compliant with CARB formaldehyde emission standards was false.

57.     At the time of the purchase, Lumber Liquidators also failed to inform the Ronquillos that the composite laminate flooring product they purchased actually exceeded the CARB formaldehyde emission limit and that formaldehyde is a chemical known to the State of California to cause cancer.

CLASS ACTION COMPLAINT                          - 15 -

010503-11  765958 V1

58.     The Ronquillos had part of the Lumber Liquidators' flooring that they purchased installed in their home by an installation professional.

59.     On March 1, 2015, the Ronquillos learned for the first time that the representations Lumber Liquidators made regarding the formaldehyde compliance of its product may have been false. In light of the risks to their health, and to the health of others in their home, the Ronquillos must consider paying to have their flooring replaced.

60.     Had the Lumber Liquidators' composite laminate flooring been CARB compliant as represented, the Ronquillos would have been satisfied with their purchase.

**B.     Mark and Adriana Scotti**

61.     In January 2015, Plaintiffs Mark and Adriana Scotti purchased several hundred square feet of 8 mm Dream Home Nirvana French Oak Laminate Flooring at a Lumber Liquidators store located in Toms River, New Jersey.  As stated on the packages, this flooring product was produced at a laminate mill located in China.

62.     The Scottis purchased the composite laminate flooring for the purpose of having it installed in their home, where they currently live with three of their children.

63.     Mr. Scotti has a significant amount of experience with building materials as he formerly worked for a major supplier of home building products.  He was aware of risks inherent in formaldehyde and of risks that building products could contain formaldehyde and other dangerous chemicals.  He was also aware that California has the most exacting emission regulations in the country. In addition, Ms. Scotti suffers from a blood disorder and is prone to immune deficiencies.  One of the Scottis' children suffers from Type-I diabetes and has elevated health concerns as a result.  The Scottis therefore specifically set out to ensure that the composite laminate flooring they would purchase was safe and did not have high levels of formaldehyde or other chemicals.

CLASS ACTION COMPLAINT                    - 16 -

64.     Prior to purchasing the composite laminate flooring from Lumber Liquidators, Mr. and Ms. Scotti viewed Lumber Liquidators' website and compared various laminate flooring products.  The Scottis saw and specifically noted representations Lumber Liquidators made regarding the safety and compliance of its products – including the claim that the composite flooring products sold in New Jersey comply with California regulations.

65.     After viewing products on the Lumber Liquidators website, the Scottis went to the Lumber Liquidators retail store, further compared composite laminate flooring products, and ultimately purchased the 8mm Nirvana French Oak Laminate flooring.  Mr. Scotti specifically noted the label on each of the products stating "California … Phase 2 Compliant for formaldehyde."

66.     The Scottis relied on the representations that the composite laminate flooring they were purchasing did not contain unsafe levels of formaldehyde – and specifically that it contained levels of formaldehyde that met California standards.  They would not have purchased the products absent this or an equivalent representation.

67.     At the time the Scottis purchased these composite laminate flooring products, Lumber Liquidators' representation that the products were compliant with CARB formaldehyde emission standards was false.

68.     At the time of the purchase, Lumber Liquidators also failed to inform the Scottis that the composite laminate flooring products they purchased actually exceeded the CARB formaldehyde emission limit and that formaldehyde is a chemical known to cause cancer.

69.     Mr. Scotti installed the composite laminate flooring in his home over the course of several weeks.

70.     On March 1, 2015, the Scottis learned for the first time that the representations Lumber Liquidators made regarding the formaldehyde compliance of its product may have been false.  In light of the risks to their health, and of the childrens' health, they now must consider incurring the cost of

CLASS ACTION COMPLAINT                          - 17 -

having their flooring removed and replaced rather than to incur the health risks posed by the

formaldehyde levels found in Lumber Liquidators' China-made products.

71.     Had the Lumber Liquidators' composite laminate flooring been CARB compliant as

represented, the Scottis would have been satisfied with their purchase and would keep the laminate

flooring installed in their home.

**C.    Monty Earl**

72.     In approximately September 2014, Plaintiff Monty Earl purchased approximately 260

square feet of 12 mm Dream Home Kensington Manor Glacier Peak Poplar Laminate Flooring at a

Lumber Liquidators store located in Denver, Colorado.  In late November 2014, Mr. Earl purchased

approximately 350 additional square feet of the same product from the same Lumber Liquidators

location.  As stated on the packages, this flooring product was produced at a laminate mill located in

China.

73.     Mr. Earl purchased the composite laminate flooring for the purpose of having it installed

in his home – specifically for use in a basement play-room and in the two bedrooms in which his 11-

year-old daughter and his 9-year-old son sleep.

74.     Mr. Earl works as a general contractor and has a significant amount of experience with

building materials.  He was aware of risks inherent in formaldehyde and of risks that building products

could contain formaldehyde and other dangerous chemicals.  He was also aware that California has the

most exacting emission regulations in the country.

75.     Prior to purchasing any of the composite laminate flooring he purchased from Lumber

Liquidators, Mr. Earl viewed Lumber Liquidators' website and compared various laminate flooring

products.  Mr. Earl noted representations Lumber Liquidators made regarding the safety and compliance

of its products – including the claim that the composite laminate flooring products sold in Colorado

comply with California regulations.

CLASS ACTION COMPLAINT                          - 18 -

76.     After viewing products on the Lumber Liquidators website, Mr. Earl went to the Lumber Liquidators retail store, further compared laminate flooring products, and ultimately purchased the composite laminate flooring.  Mr. Earl specifically noted the label on each of the products stating "California … Phase 2 Compliant for formaldehyde."

77.     Mr. Earl relied on the representations that the composite laminate flooring he was purchasing did not contain unsafe levels of formaldehyde – and specifically that it contained levels of formaldehyde that met California standards.  He would not have purchased the product absent this or an equivalent representation.

78.     At the time Mr. Earl purchased this composite laminate flooring product, Lumber Liquidators' representation that the products were compliant with CARB formaldehyde emission standards was false.

79.     At the time of the purchase, Lumber Liquidators also failed to inform the Mr. Earl that the composite laminate flooring products he purchased actually exceeded the CARB formaldehyde emission limit and that formaldehyde is a chemical known to cause cancer.

80.     Mr. Earl installed some of the composite laminate flooring in his home.  He followed all applicable directions.

81.     On March 1, 2015, Mr. Earl learned for the first time that the representations Lumber Liquidators made regarding the formaldehyde compliance of its product may have been false.  In light of the risks to his health, and to the health of his family, he now must consider incurring the cost of having the flooring removed and replaced rather than to incur the health risks posed by the formaldehyde levels found in Lumber Liquidators' China-made products.

82.     Had the Lumber Liquidators' composite laminate flooring been CARB compliant as represented, Mr. Earl would have been satisfied with his purchase and would keep the laminate flooring installed in his home.

## VI.    CLASS ACTION ALLEGATIONS

83.    Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

84.    Plaintiffs bring this action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and the following Classes consisting of:

**The California Class** (represented by Mr. and Ms. Ronquillo)

> All persons in California who purchased one or more composite laminate flooring product for their personal use rather than for resale or distribution, that was manufactured by or for Defendant in China, and that Defendant advertised or represented as being CARB compliant.

**The New Jersey Class** (represented by Mr. and Ms. Scotti)

> All persons in New Jersey who purchased one or more composite laminate wood flooring product for their personal use rather than for resale or distribution, that was manufactured by or for Defendant in China, and that Defendant advertised or represented as being CARB compliant.

**The Colorado Class** (represented by Plaintiff Earl)

> All persons in Colorado who purchased one or more composite laminate flooring product for their personal use rather than for resale or distribution, that was manufactured by or for Defendant in China, and that Defendant advertised or represented as being CARB compliant.

85.    Excluded from the Classes are governmental entities, Defendant, its affiliates and subsidiaries, Defendant's current or former employees, officers, directors, agents, representatives, their family members, and the members of this Court and its staff.

86.    Plaintiffs do not know the exact size or identities of the members of the proposed Classes, since such information is in the exclusive control of Defendant.  Plaintiffs believe that the Classes encompass thousands of individuals whose identities can be readily ascertained from Defendant's books and records.  Therefore, the proposed Classes are so numerous that joinder of all members is impracticable.

87.    Plaintiffs believe the amount in controversy exceeds $5 million.

CLASS ACTION COMPLAINT                           - 20 -

88.     All members of the proposed Classes have been subject to and affected by the same conduct. All purchased composite laminate flooring products from the Defendant that were falsely advertised and represented as being compliant with CARB standards for formaldehyde, that rigorous efforts were made to ensure compliance, and that the composite laminate flooring products were therefore safe to install in homes. Instead, the levels of formaldehyde in the flooring products were, at a minimum, unknown and in many cases emitting unlawful levels of formaldehyde.

89.     The lack of monitoring to ensure that the Chinese mills complied with CARB and the resulting non-compliant composite laminate flooring products was not disclosed to any Class members.

90.     There are questions of law and fact that are common to the Classes, and predominate over any questions affecting only individual members of the Classes. These questions include, but are not limited to the following:

a.     Whether Lumber Liquidators properly and adequately monitored their Chinese manufacturing plants to ensure CARB compliance;

b.     Whether Lumber Liquidators' composite laminate flooring products that were manufactured in China and sold in California and throughout the country exceed the CARB limit;

c.     Whether Lumber Liquidators falsely labeled and advertised its Chinese-manufactured composite laminate flooring products as being CARB compliant;

d.     Whether any false representations regarding CARB compliance were made knowingly and willfully;

e.     Whether Lumber Liquidators concealed and omitted material facts from its communications with and disclosure to all Class members regarding the levels of formaldehyde in its composite laminate flooring products;

f.     Whether Lumber Liquidators breached express warranties to Class members regarding its composite laminate flooring products;

CLASS ACTION COMPLAINT                    - 21 -

010503-11  765958 V1

g.      Whether Lumber Liquidators' misrepresentations or omissions constitute unfair or deceptive practices under the respective consumer protection statutes of each of the states represented herein;

h.      Whether Lumber Liquidators' conduct entitles Class members to injunctive relief;

i.      Whether the above practices caused Class members to suffer injury; and

j.      The proper measure of damages and the appropriate injunctive relief.

91.     The claims of the individual named Plaintiffs are typical of the claims of the proposed Classes and do not conflict with the interests of any other members of the proposed Classes.

92.     The individual named Plaintiffs will fairly and adequately represent the interests of the respective Classes.  They are committed to the vigorous prosecution of the Classes' claims and have retained attorneys who are qualified to pursue this litigation and have experience in class actions – in particular, consumer protection actions.

93.     A class action is superior to other methods for the fast and efficient adjudication of this controversy.  Each Class member is entitled to restitution of the price of the composite laminate flooring product, and the cost of installation and removal of the unlawfully sold flooring products.  The damages suffered by individual Class members are small compared to the expense and burden of individual prosecution of this litigation.  Individual Plaintiffs may lack the financial resources to vigorously prosecute a lawsuit against Defendant to recover damages stemming from Defendant's unfair and unlawful practices.

94.     This putative class action meets the requirements of Fed. R. Civ. P. 23(b)(2) and (b) (3).

CLASS ACTION COMPLAINT                    - 22 -

# VII.   CAUSES OF ACTION

## COUNT I

### FRAUDULENT CONCEALMENT

(By all Plaintiffs and all Classes described above)

95.     Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

96.     Plaintiffs bring this claim on their own behalf and on behalf of each member of the Classes described above.

97.     Lumber Liquidators concealed and suppressed material facts concerning the content of formaldehyde in its Chinese-made composite laminate flooring products.

98.     Defendant had a duty to disclose the true content of formaldehyde in its Chinese-made composite laminte flooring products because it was known and/or accessible only to the Defendant, who had superior knowledge and access to the facts, and the Defendant knew it was not known to or reasonably discoverable by Plaintiffs and the Classes.  These omitted and concealed facts were material because they directly impact the safety of the flooring products.  Whether composite flooring was manufactured with levels of formaldehyde that can pose significant health risks is a material safety concern.

99.     Defendant actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits, and did so at the expense of Plaintiffs and the Classes.

100.    On information and belief, Lumber Liquidators has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Classes and conceal material information regarding the levels of formaldehyde that exist in its Chinese-made composite laminate flooring products.

101.    Plaintiffs and the Classes were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the

Classes' actions were justified. Lumber Liquidators was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Classes.

102. Because of the concealment and/or suppression of the facts, Plaintiffs and the Classes sustained damage because they purchased and retained flooring products that they would not have purchased or installed in their homes had Defendant timely disclosed the fact that the products were not compliant with CARB standards.

103. Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Classes' rights and well-being to enrich itself. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT II

### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. §§ 2301, *ET SEQ*

(By all Plaintiffs and all Classes described above)

104. Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

105. Plaintiffs bring this claim on their own behalf and on behalf of each member of the Classes described above.

106. Plaintiffs and the other members of the Classes are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

107. Lumber Liquidators is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §§ 2301(4) – (5).

108. Lumber Liquidators' flooring that was purchased separate from the initial construction of the structure into which it was to be installed constitutes a "consumer product" within the meaning of 15 U.S.C. § 2301(1).

109.    Lumber Liquidators' express warranties and written affirmations of fact regarding the nature of the flooring, *i.e.*, that the flooring was in compliance with CARB formaldehyde standards, constitute a written warranty within the meaning of 15 U.S.C. § 2301(6).

110.    Lumber liquidators breached their warranties by manufacturing, selling, and/or distributing flooring products with levels of formaldehyde that exceed the CARB standards, or by making affirmative representations regarding CARB compliance without knowledge of its truth.

111.    Lumber Liquidators' breach deprived Plaintiffs and the other Class members of the benefit of their bargains.

112.    The amount in controversy of Plaintiffs' individual claims exceeds the value of $25.  In addition, the amount in controversy exceeds the value of $50,000 (exclusive of interest and costs) computed on the basis of all claims to be determined in this action.

113.    Defendant has been notified of its breach of written warranties and has failed to adequately cure those breaches.  As a direct and proximate result of Defendant's breaches of its written warranties, Plaintiffs and the other Class members sustained damages in amounts to be determined at trial.

## COUNT III

### VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200, *ET SEQ.*, UNLAWFUL, UNFAIR, OR FRAUDULENT BUSINESS ACTS AND PRACTICES

(By Plaintiffs Ronquillo and the California Class)

114.    Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

115.    California Business and Professions Code § 17200, *et seq.* prohibits "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.

CLASS ACTION COMPLAINT                    - 25 -

010503-11  765958 V1

116.    Throughout the Class Period, Defendant engaged in unlawful business acts and/or practices by selling and/or distributing composite laminate flooring products in California that exceed the CARB limit for formaldehyde emissions from composite wood products set forth in Title 17 of the California Code of Regulations, §§ 93120 – 93120.12 *et seq.*, specifically "Phase 2," which mandates the maximum levels of formaldehyde that laminate flooring products can emit.

117.    Defendant's deceptive statements detailed above further violate California Health and Safety Code § 25249.6 (Proposition 65), which requires products emitting formaldehyde at levels above 40 micrograms per day to contain a health hazard warning.

118.    Defendant further engaged in unlawful business acts and/or practices by not informing consumers that Defendant's composite laminate flooring products sold in California emit formaldehyde at levels that exceed the formaldehyde emission limit set forth in the CARB standards.  These actions were misleading and deceptive, and violated the False Advertising Law, California Business & Professions Code §§ 17500, *et seq.* and the Consumer Legal Remedies Act, California Civil Code §§ 1750, *et seq.*

119.    Throughout the Class Period, Defendant engaged in unlawful business acts and/or practices by making untrue, deceptive, or misleading environmental marketing claims on the labels of its composite laminate flooring products' packaging and on promotional materials including pages of the Lumber Liquidators' website, in violation of California's "Greenwashing" Statute, Cal. Bus. & Prof. Code § 17580.5.  Such claims include, but are not limited to:  overstating the environmental attributes of the composite laminate flooring products it distributes in California, failing to substantiate that the laminate wood flooring products it distributes in California have received third-party certification of CARB compliance, and misrepresenting explicitly or through implication that the composite laminate wood flooring Defendant distributes in California is non-toxic.  *See* Cal. Bus. & Prof. Code § 17580.5(a).

010503-11  765958 V1

120.     Throughout the Class Period, Defendant has engaged in unlawful business acts and/or practices by expressly warranting on every package of composite laminate flooring products it distributes and sells in California, as well as in promotional materials and product invoices, that the products comply with CARB formaldehyde standards and all other applicable laws and regulations when they do not.  This express warranty also appears on Defendant's website, and product invoices and instruction materials.  Defendant's breach of this express warranty violates California state warranty law, California Commercial Code § 2313.

121.     The acts, omissions, and practices alleged herein also constitute unfair business acts and practices in that Defendant's conduct is immoral, unscrupulous, and offends public policy by seeking to profit from Chinese-made composite laminate flooring products that emit dangerous levels of formaldehyde in violation of California law.

122.     The acts, omissions, and practices alleged herein also constitute fraudulent business acts and practices in that Defendant's representations regarding its compliance with CARB emission standards, regarding its measures to ensure CARB compliance by its Chinese manufacturers, and regarding the safety and quality of its composite laminate flooring are false, misleading, and are likely to deceive California customers.

123.     Plaintiffs relied on Defendant's misrepresentations.

124.     As a direct result of Defendant's unlawful, unfair, or fraudulent business acts and/or practices, Plaintiffs and Class members suffered injury in fact and lost money or property.

125.     Defendant profited from its sales of its falsely and deceptively advertised products to unwary California customers.

126.     Accordingly, Plaintiffs, on behalf of themselves and all others similarly situated, seek restitution, injunctive relief against Defendant in the form of an order prohibiting Defendant from engaging in the alleged misconduct described herein, and other relief as specifically prayed for herein.

CLASS ACTION COMPLAINT                              - 27 -

<u>**COUNT IV**</u>

**VIOLATION OF CALIFORNIA BUSINESS AND
PROFESSIONS CODE § 17500, *ET SEQ.***

(By Plaintiffs Ronquillo and the California Class)

127.   Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

128.   Throughout the Class Period, Defendant engaged in unlawful and/or fraudulent conduct under California Business & Professions Code §§ 17500, *et seq.* ("the False Advertising Law"), by engaging in the sale of composite laminate flooring products, and publically disseminating various advertisements that Defendant knew or reasonably should have known were untrue and misleading. Defendant committed such violations of the False Advertising Law with actual knowledge or knowledge fairly implied on the basis of objective circumstances.

129.   Defendant's advertisements, representations, and labeling as described herein were designed to, and did, result in the purchase and use of the Chinese-made composite laminate flooring products and Defendant profited from its sales of these products to unwary consumers.

130.   Plaintiffs reasonably relied on Defendant's representations made in violation of California Business and Professions Code §§ 17500, *et seq.*

131.   As a direct result of Defendant's violations, Plaintiffs suffered injury in fact and lost money.

132.   Accordingly, Plaintiffs, on behalf of themselves and all others similarly situated, seek restitution and injunctive relief against Defendant in the form of an order prohibiting Defendant from engaging in the alleged misconduct described herein, and other relief as specifically prayed for herein.

CLASS ACTION COMPLAINT                     - 28 -
010503-11  765958 V1

## COUNT V

### VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CAL. CIV. CODE § 1750 *ET SEQ.*

(By Plaintiffs Ronquillo and the California Class)

133.     Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

134.     Defendant is a "person" within the meaning of California Civil Code §§ 1761(c) and 1770, and provides "goods" within the meaning of Civil Code §§ 1761(a) and 1770.  Defendant's customers, including Plaintiffs and Class members, are "consumers" within the meaning of Civil Code §§ 1761(d) and 1770.  Each purchase of Defendant's composite laminate flooring products by Plaintiffs and each Class member constitutes a "transaction" within the meaning of Civil Code §§ 1761(e) and 1770.

135.     Each Class member purchased goods from Defendant that was primarily for personal, family, or household purposes.

136.     The Consumer Legal Remedies Act makes it unlawful for a company to:

            a.     Misrepresent the certification of goods.  Cal. Civ. Code § 1770(a)(2)(3);

            b.     Represent that goods have characteristics or approval which they do not have. Cal. Civ. Code § 1770(a)(5);

            c.     Represent that goods are of a particular standard, quality, or grade, if they are of another.  Cal. Civ. Code § 1770(a)(7);

            d.     Advertise goods with intent not to sell them as advertised.  Cal. Civ. Code § 1770(a) (9).

            e.     Represent that the subject of a transaction has been supplied in accordance with a previous representation when it has not.  Cal. Civ. Code § 1770(a) (16).

137.     Throughout the Class Period, Defendant violated and continues to violate the above-mentioned provisions.

138.     As a direct and proximate result of Defendant's violations, Plaintiffs and Class members have suffered and are continuing to suffer irreparable harm.

139.     Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the California Consumer Legal Remedies Act because Defendant is still representing that the flooring products have characteristics and qualifications which are false and misleading, and has injured Plaintiffs and Class members.

140.     In accordance with Civil Code § 1780 (a), Plaintiff and members of the Class seek injunctive and equitable relief for Lumber Liquidators' violations of the CLRA that includes an order prohibiting Defendant from continuing to sell non-CARB compliant composite laminate flooring products and prohibiting Defendant from advertising or labeling non-compliant products as being CARB compliant.  In addition, after mailing appropriate notice and demand in accordance with Civil Code § 1782(a) and (d), Plaintiffs will amend this Class Action Complaint to include a request for damages.  Plaintiffs and members of the Class request that this Court enter such orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair business practices, and for such other relief, including attorneys' fees and costs, as provided in Civil Code § 1780 and the Prayer for Relief.

## COUNT VI

### VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT

(By Plaintiffs Scotti and the New Jersey Class)

141.     Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

CLASS ACTION COMPLAINT                         - 30 -

010503-11  765958 V1

142.    The advertisement, promotion, distribution, supply, sale, and lease of composite flooring products is a "sale or advertisement" of "merchandise" under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1.

143.    Defendant's conduct and omissions alleged herein occurred throughout the United States, including within New Jersey and constitute an "unconscionable commercial practice" under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2, as such conduct is unfair and unjust and materially departs from standards of good faith, honesty in fact, and fair dealing in the public marketplace. Defendant's conduct is factually dishonest and lacks fair dealing.

144.    The fact that formaldehyde emissions from its composite laminate flooring products exceeded CARB standards and posed risk to human health is a material fact that Defendant was obligated to disclose to consumers.

145.    Defendant's conduct of falsely claiming that its Chinese-made composite laminate flooring products comply with CARB standards operates as a "deception, fraud, false pretense, false promise [or] misrepresentation" under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2, as such conduct is misleading to the average consumer and is capable of, and likely to, mislead an average consumer.

146.    Defendant's conduct of concealing the fact that its Chinese mills did not comply with CARB regulations constitutes a "knowing concealment, suppression or omission of any material fact" under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2. Lumber Liquidators was and is aware that its concealment, omission, and misrepresentation of the actual levels of formaldehyde in its composite flooring products will cause Plaintiffs and the Class to unknowingly purchase flooring products that are unsafe, and Defendant intended this result.

147.    Plaintiffs and the Class suffered ascertainable losses in the form of money they paid for products they would not have purchased absent Defendant's misrepresentations and the cost of

CLASS ACTION COMPLAINT                              - 31 -

remedying the risks by removing and replacing the Chinese-made composite laminate flooring with non-toxic products.  Plaintiffs and Class members did not receive the benefit of their bargain because they were sold a product for use in their homes, represented to be safe and compliant, but which is unfit for use and dangerous to their health.

148.     The ascertainable losses of Plaintiffs and the Class are a direct and proximate result of Lumber Liquidators' actions alleged above.

### COUNT VII

### VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT

(By Plaintiff Earl and the Colorado Class)

149.     Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

150.     Pursuant to the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-113(1), Plaintiff and Class members are actual consumers of Lumber Liquidators' goods and were injured as a result of the deceptive trade practices described herein.

151.     The Chinese-made composite laminate flooring products that Lumber Liquidators has sold to consumers in Colorado are goods or products to which the Colorado Consumer Protection Act applies.

152.     Lumber Liquidators is a "person" as defined by the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-102 (6).

153.     Defendant's conduct and omissions alleged herein occurred throughout the United States, including within Colorado and constitute "deceptive trade practice[s]" under the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105 (1) by reasons that include, but are not limited to:

a.     Colo. Rev. Stat. § 6-1-105(1)(e):  "Knowingly mak[ing] a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or

CLASS ACTION COMPLAINT                          - 32 -

property or a false representation as to the sponsorship, approval, status,, affiliation, or connection of a person therewith;"

b.      Colo. Rev. Stat. § 6-1-105(1)(g):  "Represent[ing] that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another;"

c.      Colo. Rev. Stat. §6-1-105(1)(i): Advertises goods, services or property with the intent not to sell them as advertised.

d.      Colo. Rev. Stat. § 6-1-105(1)(u):  "Fail[ing] to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclosure such information was intended to induce the consumer to enter into a transaction."

154.    Lumber Liquidators' deceptive trade practices include, among other things:

- actively hiding and continuing to make efforts to hide the true formaldehyde levels in its Chinese-manufactured composite laminate flooring products;

- advertising and representing that its Chinese-manufactured composite laminate flooring products are CARB compliant when they are not;

- by selling flooring products that violate the CARB, and the Toxic Substance Control Act, 15 U.S.C. § 2601 *et seq.*, and that pose serious health risks when installed in people's homes.

155.    Lumber Liquidators' misrepresentations and omissions were deceptive and had the capacity to deceive reasonable consumers.

156.    Lumber Liquidators' misrepresentations and omissions were for the purpose of, and did, induce Plaintiff and the other members of the Class to act or refrain from acting, or had the capacity to attract customers.

CLASS ACTION COMPLAINT                     - 33 -

157.    Lumber Liquidators' above-described deceptive trade practices significantly impacted the public, including Plaintiff and the other members of the Classes.

158.    As a direct and proximate result of Lumber Liquidators' deceptive trade practices, Plaintiff and the other members of the Class have suffered damages.

159.    Pursuant to the Colorado Consumer Protection Act, § 6-1-113(2), Plaintiff and the other members of the Class are entitled to the relief set forth below, as appropriate, including but not limited to compensatory damages, punitive damages, attorneys' fees, and the costs of this action.

160.    As set forth in Colorado Consumer Protection Act §§ 6-1-113(2)(a)(III) and 6-1-113(2)(b)(2.3), Lumber Liquidators has acted fraudulently, willfully, knowingly, or intentionally with respect to its injury-causing conduct, such that an award of punitive damages is appropriate.

## COUNT VIII

### BREACH OF EXPRESS WARRANTY

(By all Plaintiffs and all Classes described above)

**[Plaintiffs have sent Defendant notification of a breach of warranty as required under the statutes of the respective states at issue and intend to amend their complaint to add a claim for breach of express warranty based on the facts alleged herein absent a bona fide offer of an adequate remedy**.]

## COUNT IX

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

(By all Plaintiffs and all Classes described above)

161.    Plaintiffs re-allege and incorporate all paragraphs above as though fully set forth herein.

162.    Implied in the purchase of the composite flooring products by Plaintiffs and the Class is the warranty that the purchased products are legal, safe, and can lawfully be sold and possessed.

CLASS ACTION COMPLAINT                    - 34 -

010503-11  765958 V1

163.    Defendant knew or reasonably should have known that its Chinese-made composite flooring products were unlawful for sale pursuant to the Toxic Substance Control Act, 15 U.S.C. § 2601 *et seq*.

164.    When Defendant sold these products, it implicitly warranted that the products were merchantable in that they were legal and could be lawfully possessed and/or sold.

165.    No reasonable consumer would knowingly purchase a flooring product that is toxic, harmful, and illegal to own or possess.

166.    Lumber Liquidators' Chinese-made composite flooring products are unfit for the ordinary purpose for which they were intended.  These products are illegal, mislabeled, and economically worthless.

167.    As a result, Plaintiffs and the Class were injured through their purchase of unsuitable, useless, illegal, and unsellable products.

168.    Plaintiffs and the Class were damaged in the amounts they paid for the Chinese-made composite flooring, the amounts they paid to have it installed, and the amounts they now must pay to have it removed or remedied.

## COUNT X

### DECLARATORY RELIEF

169.    Plaintiffs incorporate by reference the foregoing allegations as if set fully herein.

170.    Plaintiffs, on behalf of themselves and all others similarly situated, contend that Defendant's sale of composite laminate flooring products do not comply with the CARB standards.  On information and belief, Defendant contends that its sale of laminate wood flooring products comply with the CARB standards.

171.    A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

CLASS ACTION COMPLAINT                   - 35 -

1

## VIII.   PRAYER FOR RELIEF

2          WHEREFORE, Plaintiffs, on behalf of themselves and all Class members, seek the following

3 relief against Defendant:

4          A.          An order certifying this action as a class action under Fed. R. Civ. P. 23, defining

5 the Classes as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiffs

6
7 are proper representatives of the respective Classes;

8          B.          A finding and declaration that Defendant's policies and practices of labeling and

9 advertising the composite laminate flooring products it sells in California and throughout the country as

10 CARB compliant are unlawful pursuant to Title 17 of the California Code Regulations, §§ 93120-

11 93120.12;

12          C.          A finding and declaration that Defendant's policies and practices of distributing

13 and/or selling composite laminate flooring products in California and throughout the country with

14
15 formaldehyde emissions that violate the CARB standards are unlawful pursuant to Title 17 of the

16 California Code Regulations, §§ 93120-93120.12;

17          D.          Injunctive relief prohibiting Defendant from continuing to distribute and/or sell

18 composite laminate flooring products that violate the CARB standards;

19          E.          Restitution of all money and/or property that Plaintiffs and Class members

20
21 provided to Defendant for the purchase and installation of Defendant's Chinese-made composite

22 laminate flooring products;

23          F.          Damages in an amount to be determined at trial for damages including actual,

24 compensatory, and consequential damages incurred by Plaintiffs and Class members;

25          G.          An award to Plaintiffs and Class members of reasonable attorneys' fees and

26 costs; and

27          H.          An award of such other and further relief as this Court may deem appropriate.

28

CLASS ACTION COMPLAINT                              - 36 -

010503-11 765958 V1

## IX.   DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury on all issues so trouble.

DATED:  March 13, 2015               HAGENS BERMAN SOBOL SHAPIRO LLP

By _____/s/ Jeff D. Friedman_____

Jeff D. Friedman, Cal. Bar No. 173886
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone:  (510) 725-3000
Facsimile:  (510) 725-3001
*jefff@hbsslaw.com*

Steve W. Berman
Ari Y. Brown
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
*steve@hbsslaw.com*
*ari@hbsslaw.com*

*Attorneys for Plaintiffs and the Proposed Class*

CLASS ACTION COMPLAINT               - 37 -

## DECLARATION RE CLRA VENUE

I, Maria Ronquillo, do hereby declare and state as follows:

1.      I am a party plaintiff in Maria and Romualdo Ronquillo, husband and wife, on behalf of themselves and all others similarly situated v. Lumber Liquidators, Inc., a Delaware corporation.  Pursuant to CAL. CIV. CODE § 1780(d), I make this declaration in support of the Class Action Complaint and the claim therein for relief under CAL. CIV. CODE § 1780(a).  I have personal knowledge of the facts stated herein and, if necessary, could competently testify thereto.

2.      This action for relief under CAL. CIV. CODE § 1780(a) has been commenced in a county that is a proper place for trial of this action because Lumber Liquidators does business throughout the State of California.

This declaration is signed under penalty of perjury under the laws of the State of California this _13th_ day of March, 2015.

_Maria Ronquillo_
Maria Ronquillo

## DECLARATION RE CLRA VENUE

I, Romualdo Ronquillo, do hereby declare and state as follows:

1.        I am a party plaintiff in Maria and Romualdo Ronquillo, husband and wife, on behalf of themselves and all others similarly situated v. Lumber Liquidators, Inc., a Delaware corporation.  Pursuant to Cal. Civ. Code § 1780(d), I make this declaration in support of the Class Action Complaint and the claim therein for relief under Cal. Civ. Code § 1780(a).  I have personal knowledge of the facts stated herein and, if necessary, could competently testify thereto.

2.        This action for relief under Cal. Civ. Code § 1780(a) has been commenced in a county that is a proper place for trial of this action because Lumber Liquidators does business throughout the State of California.

This declaration is signed under penalty of perjury under the laws of the State of California this  13th day of March, 2015.

_____

Romualdo Ronquillo